UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND (DKT. 25) JS-6**

I.     <u>Introduction</u>

SFPP, L.P. ("Plaintiff") brought this action in the Los Angeles Superior Court against Union Pacific Railroad Company ("Defendant"). The Complaint seeks declaratory relief in the form of the appropriate interpretation of certain terms of the operative contract between the parties. Specifically, Plaintiff seeks a determination that Defendant must establish its ownership rights to certain real property on which Plaintiff has an easement for the placement of underground pipelines, before Defendant can require Plaintiff to relocate them. Dkt. 1, Ex. 1. Defendant disputes this interpretation of the contract.

Defendant removed the action pursuant to 28 U.S.C. §§ 1331 and 1441. Although the complaint does not present a federal cause of action, Defendant contends that there is federal jurisdiction as to Plaintiff's claim because its resolution will involve the interpretation of federal law about which the parties disagree. Dkt. 1. Following removal, Defendant filed a counterclaim against Plaintiff seeking declaratory relief as to its rights pursuant to the contract between the parties. Specifically, Defendant seeks a determination that certain 19th Century actions by Congress granted to Defendant ownership rights to the real property at issue and that such rights provide a sufficient basis for it to require Plaintiff to relocate its pipelines. Dkt. 10, 29.

Plaintiff filed a Motion to Remand (the "Motion"). Dkt. 25. Defendant filed an opposition (Dkt. 30) and Plaintiff replied (Dkt. 32). A hearing on the Motion was conducted on May 18, 2015, at the conclusion of which the matter was taken under submission. Dkt. 37. For the reasons stated in this Order, the Motion is **GRANTED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|----------|--------------------------|------|--------------|
| Title    | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

## II.    Factual Background

A.    The Allegations in the Complaint

Plaintiff is a successor entity to Santa Fe Pacific Pipeline, Inc. and Southern Pacific Pipelines, Inc. Compl., Dkt. 1, Ex. 1 ¶ 6. Defendant is the successor entity to Southern Pacific Transportation Company and Southern Pacific Railroad Corporation. *Id.* ¶ 7. On July 29, 1994, these predecessor entities entered into a contract that is titled, "Amended and Restated Easement Agreement" (the "AREA"). *Id.* ¶ 2. Section 1(a) of the AREA granted to Plaintiff's predecessors a "perpetual and non-exclusive easement and right to construct, reconstruct, renew, maintain, and operate a pipe line and appurtenances ... in, upon, along, and across the property of Railroad." *Id.* ¶10; *see also id.*, Ex. A. It is undisputed that the rights granted by the AREA are now held by Plaintiff. Section 3 of the AREA provides that

> in the event that Railroad shall at any time deem necessary, [Plaintiff] shall, upon receipt of written notice so to do, at [Plaintiff's] sole cost and expense, change the location of said pipe line, its adjunct or appurtenances, on railroad property to such point or points thereon as Railroad shall designate and reconstruct or reinforce the same.

*Id.* ¶ 11; *see also id.*, Ex. A.

On August 19, 2014, Defendant provided written notice of its request that Plaintiff relocate its pipeline (the "Alhambra Pipeline"). Defendant stated that the relocation was necessary due to Defendant's installation of a second main line railroad track over its Alhambra Subdivision in the Los Angeles area (the "Alhambra Property"). *Id.* ¶ 18. Defendant has "threatened SFPP with costs and damages if SFPP failed to relocate the Alhambra Pipeline." *Id.* ¶19.

On December 3, 2014, Plaintiff responded through a letter requesting that, "in light of [a] recent court ruling [by the California Court of Appeal in a related action[1]]," Defendant demonstrate, pursuant to the AREA, that it has sufficient ownership interest in the property on which the Alhambra Pipeline is located to justify the requested relocation. *Id.* ¶ 21; *see also id.,* Ex. D. On February 6, 2015, Defendant replied by letter stating that Plaintiff's "duty to relocate under the AREA or otherwise is not affected by the recent Court of Appeal decision regarding payment of rent." *Id.* ¶ 22*; see also id.*, Ex. E. Defendant also repeated its demand that Plaintiff relocate the Alhambra Pipeline. *Id.* On February 18, 2015, Plaintiff sent another letter to Defendant in which it again requested that Defendant explain why it is entitled to require either the relocation of the portions of the Alhambra Pipeline *from* property that Defendant does not own, and/or their relocation *to* property that Defendant does not own. *Id.* ¶ 23.

When this action was filed the parties remained at an impasse. Defendant maintains that Plaintiff is required to relocate the Alhambra Pipeline, and Plaintiff responds that, before requiring such an action by Plaintiff, Defendant must demonstrate that it has sufficient title to the Alhambra Property. *Id.* ¶ 24.

---

[1] *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc. et al.* ("UPRC"), 231 Cal. App. 4th 134 (2014). This decision is discussed in Section II.B.1, *infra.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

Plaintiff filed this action in the Los Angeles Superior Court on February 23, 2015. Dkt. 1, Ex. 1. On March 12, 2015, Plaintiff filed a notice of related case, requesting that this action be transferred to the Superior Court judge to whom a related action had been assigned. Request for Judicial Notice ("RJN"), Dkt. 25-9, Ex. 6.[2] On March 17, 2015, which was five days later, Defendants removed the action.[3]

  B.  Prior Litigation

Three other cases in which Plaintiff and Defendant are adverse parties are now pending in California courts: (i) *Union Pacific Railroad Company v. Santa Fe Pacific Pipelines, Inc. et al.*, Los Angeles County Superior Court, BC 319170, California Court of Appeal, B242864, California Supreme Court, S223179 (the "Rental Action"); (ii) *Union Pacific Railroad Company v. SFPP, L.P.*, Riverside County Superior Court, INC 055339, California Court of Appeal E062255 and E062823 (the "Beaumont Hill Action"); and (iii) *Union Pacific Railroad Company v. SFPP, L.P.,* Riverside County Superior Court, PSC 1402455 (the "Pomona Action"). Dkt. 17. Because certain issues in these actions are related to certain of those presented here, each of the actions is described.

  1.  <u>The Rental Action</u>

In the Rental Action, Defendant sought a determination of the amount of rental payments due from Plaintiff under the AREA for the use of its pipeline easement between 2004 and 2014. Defendant's claim concerned rent as to all 1800 miles of pipeline easements that Defendant purported to grant to Plaintiff under the AREA. This includes those easements that are at issue in this action as well as others. After a bench trial in the Los Angeles Superior Court, it was determined Defendant was entitled to annual rental payments from Plaintiff of more than $14 million per year. *UPRC*, 231 Cal. App. 4th 134, 145 (2014). An appeal followed. On November 5, 2014, the California Court of Appeal for the Second District issued its opinion (the "COA Opinion"). *Id.* The COA Opinion affirmed the ruling by the trial court that collateral estoppel did not apply, but reversed and remanded as to all other issues.

The COA Decision determined that the 1875 Congressional Act, 43 U.S.C. §§ 934–939, "did not provide the railroad with sufficient property interests to justify its collecting rent on the pipeline's subsurface easements." *Id.* at 160. After analyzing case law regarding railroad property rights pursuant to the 1875 Congressional Act, the appellate court determined that

  the railroad's rights to the land underneath its rights-of-way granted by the 1875 Act were
  limited to what was necessary to support the railroad itself. Otherwise, the rights to the

---

[2] Matters of public record are properly subject to judicial notice. This includes court records. *Galvan v. City of La Habra*, 2014 WL 1370747, at *12 (C.D. Cal. April 8, 2014) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.2006)). Accordingly, the request for judicial notice of the documents filed in the RJN is GRANTED.
[3] California Rules of Court 3.300(g) provides that any opposition to a notice of related case must be filed within five days of the filing of the initial notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

subsurface remained with the owner of the servient estate.[4] Put another way, the 1875 Act granted the Railroad substantial rights to the surface of the land over which it operates its trains, but it did not make the subsurface the "property of the railroad." [¶] Therefore, the Railroad's right to collect rent from the Pipeline for use of its subsurface easements cannot be based solely on acquisitions obtained via the 1875 Act or its progeny.

*Id.* at 164-65.

The COA Decision also determined that the Congressional Acts that were adopted prior to 1871 "did not provide the railroad with sufficient property interests to justify its collecting rent on the pipeline's subsurface easements." *Id.* at 165. It concluded that

The Railroad may use the subsurface underlying its pre–1871 rights-of-way for things that support the construction and operation of their railroad—i.e., for railroad purposes. But it cannot use the subsurface for other purposes. Renting out the subsurface to a third party from a different industry for private gain cannot reasonably be considered a railroad purpose. [¶] Therefore, the Railroad's right to collect rent from the Pipeline for use of subsurface easements under the Railroad's "right-of-way property" cannot be based solely on acquisitions obtained via the pre–1871 Acts.

*Id.* at 170.

The appellate court also concluded that

the case must be remanded to the trial court for further proceedings to determine which pipeline easements ran through the "property of the railroad" between January 1, 2004, and December 31, 2013. Rent may be charged by the Railroad only on those easements. Rent may not be charged on easements that ran through rights-of-way acquired by the Railroad solely via the Congressional Acts.

*Id.* at 178. The COA Opinion then stated:

We merely hold that (1) the pre–1871 and 1875 Congressional Acts, by themselves, did not convey a sufficient property interest to the Railroad to justify its collecting rent on the Pipeline's subsurface easements; and (2) the Railroad has the burden to prove what parcels were the "property of the railroad" from January 1, 2004, through December 31, 2013, before it can collect rent from the Pipeline for easements traversing those parcels during that period of time.

*Id.* at 209. Defendant filed a petition for rehearing with the Court of Appeal. It was denied on December 5, 2014. RJN, Dkt. 25-3, Ex. 1. Defendant then filed a petition for review in the California Supreme Court. It

---

4 The servient estate was identified earlier in the opinion as "the federal government or its grantee." *Id.* at 160.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|----------|--------------------------|------|--------------|
| Title    | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

was denied on January 21, 2015. *Id.* Ex. 2. Defendant did not file a Petition for Certiorari seeking review by the United States Supreme Court.

> 2.   The Beaumont Hill Action

This action relates to Defendant's request that, pursuant to the AREA, Plaintiff relocate a 9.4 mile section of pipeline in Riverside County. Following a trial, the Superior Court entered judgment for Defendant that required Plaintiff to pay relocations costs. This matter is currently on appeal to the California Court of Appeal for the Fourth District. On February 4, 2015, based on the COA Opinion issued in the Rental Action, Plaintiff filed a Petition for Writ of Error *Coram Vobis* in the Court of Appeal for the Fourth District requesting that the judgment of the Riverside County Superior Court be vacated. Specifically, Plaintiff requested a determination that Defendant's title in the property at issue, which was obtained by a Congressional Act, was not per se a sufficient basis to entitle Defendant to require or grant Plaintiff the pipeline easements. Plaintiff instead argued that, under the COA Opinion, Defendant was required to prove what parcels were the "property of the railroad" in Beaumont Hill pursuant to the AREA. RJN, Dkt. 25-7, Ex. 4. On February 19, 2015, the Court of Appeal for the Fourth District issued an order to show cause why the requested relief should not be granted. *Id.,* Ex. 5.

> 3.   The Pomona Action

This action, which is pending in the Los Angeles Superior Court at its Pomona Courthouse, arises from Defendant's request that, pursuant to the terms of the AREA, Plaintiff relocate a section of its pipeline in Pomona, California. It is presently set for a jury trial this summer. No issues are presented as to land granted to Defendant pursuant to Congressional Acts.

**III.   Analysis**

> A.   Whether the Court Has Subject Matter Jurisdiction over this Action

> 1.   Legal Standard

Federal courts have limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, a determination of subject matter jurisdiction must be made before the merits of a case can be addressed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). If at any time before final judgment the court determines that it is without subject matter jurisdiction, a removed action shall be remanded to the state court in which it was originally filed. 28 U.S.C. § 1447(c).

The party removing an action bears the burden of establishing federal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). "Where doubt regarding the right to removal exists, a case should be remanded to state court," because "it is well established that the plaintiff is master of her complaint and can plead to avoid federal jurisdiction." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In general, a case arises under federal law when "federal law creates a cause of action." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

Federal question jurisdiction may also arise when a "substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Id.* (quoting *Franchise Tax Bd. of State of Cal. V. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983)). This is a "'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). Thus, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 547 U.S. at 1065 (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310 (2005)). "Where all four of these requirements are met ... jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Grable*, 545 U.S. at 312.

Determinations about "federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986). Under the "'well-pleaded complaint rule,' federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

      2.   <u>Application</u>

Because the Complaint does not allege a federal cause of action, Defendant relies on the second basis for federal jurisdiction. Thus, it contends that the action raises a substantial, disputed question of federal law that is a necessary element of Plaintiff's declaratory relief claim.

      a)   Whether a Federal Question is "Necessarily Raised"

Defendant contends that Plaintiff's declaratory relief claim necessarily raises a question of federal law -- whether property rights granted pursuant to the pre-1871 and 1875 Congressional Acts conveyed to Defendant, or its predecessors, sufficient interest in the relevant real property to support Defendant's demand that Plaintiff relocate its pipelines. Accordingly, it argues that the determination of the declaratory relief claim will require interpretation of one or more Acts of Congress.

The pre-1871 and 1875 Congressional Acts are "necessarily raised" by the Complaint. It alleges that Defendant does not have a sufficient property interest to the Alhambra Property to warrant its demand for relocation of the pipelines. Compl., Dkt. 1, Ex. 1 ¶¶ 13-16. The basis for these allegations is Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

assertion about the limited interest in the Alhambra Property that was granted to Defendant pursuant to the pre-1871 and 1875 Congressional Acts. Plaintiff contends that these Acts did not convey a sufficient property interest to entitle Defendant to grant subsurface pipeline easements to Plaintiff. That this is a basis for Plaintiff's claims is confirmed by the allegations in the Complaint about the COA Opinion. Thus, the Complaint alleges that the Court of Appeal held that the pre-1871 and 1875 Congressional Acts did not per se convey a sufficient property interest to Defendant to justify its charging rent to Plaintiff for its subsurface easements. Instead, the Complaint alleges that the COA Opinion held that, on remand, Defendant would be required to prove what parcels were the "property of the railroad" before it could collect rent from Plaintiff. Compl., Dkt. 1, Ex. 1 ¶¶ 13-16. The Complaint also alleges that because

> a substantial portion of [Defendant's] right-of-way at issue in the proposed Alhambra relocation was obtained by [Defendant's] predecessors via Congressional Act, including the pre-1871 Acts and the 1875 Act. [Plaintiff] therefore alleges, on information and belief, that [Defendant] does not have sufficient title in this property to invoke the relocation provision under the AREA.

*Id.* ¶ 20.

Plaintiff argues that no federal issue is raised on the face of the Complaint. It contends that the declaratory relief sought does not ask for a determination about the extent of the property interest granted by the pre-1871 and 1875 Congressional Acts. Nor does the Complaint seek any particular determination as to Defendant's title to the Alhambra Property.[5] Instead, according to Plaintiff, the Complaint seeks only a declaration that, pursuant to the terms of the AREA, Defendant is required to prove that it has title to the Alhambra Property before it can require Plaintiff to relocate its pipelines. That issue will turn on an interpretation of the AREA. Plaintiff argues that issue is distinct from whether Defendant actually has title to the property. Therefore, no analysis of the Congressional Acts is required to determine the appropriate declaratory relief. Rather, the Complaint raises questions of contract interpretation, which is a state law issue.

Plaintiff is correct that the Complaint raises substantial issues about the interpretation of the AREA. Thus, a determination that the AREA does not require Defendant to prove its ownership of the Alhambra Property as a condition to requiring Plaintiff to relocate its pipelines, would be dispositive of Plaintiff's request for declaratory relief and would not necessarily require an interpretation of federal law. But, the analysis may not necessarily be cabined in this way. For example, it appears that the AREA assumed that Defendant owned the property that was the subject to the contract. That is the basis on which Defendant's predecessor granted the easements through the AREA. Similarly, one or both parties could have been mistaken about land ownership at the time that they entered the AREA. An analysis of that issue could require a consideration of their respective understandings as to the property interests conveyed to Defendant by the pre-1871 and 1875 Congressional Acts. That issue has been addressed in

---

[5] As noted, Defendant's Counterclaim (Dkt. 10), and its First Amended Counterclaim (Dkt. 29), each seeks declaratory relief on these issues. But, "a counterclaim … cannot serve as the basis for 'arising under' jurisdiction." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

detail in the COA Opinion in which these statutes were interpreted.[6]

The letters by Plaintiff's counsel, which preceded the filing of the Complaint, are consistent with this view. The initial letter states:

> The California Court of Appeal recently ruled that Union Pacific must prove that it has sufficient ownership interests in its railroad right-of-way to collect rent from SFPP for subsurface pipeline easements pursuant to the AREA. Union Pacific's demand that SFPP relocate its pipeline at the Alhambra Subdivision is entirely predicated on the AREA and Union Pacific's grant of subsurface pipeline easements to SFPP pursuant to the AREA. Accordingly, in light of this recent court ruling, SFPP requests that Union Pacific demonstrate, for any affected segment of pipeline, that it is the full fee owner of the right-of-way before SFPP will go forward with any relocation plans.

Dkt. 1-1, Ex. D. The second letter from Plaintiff's counsel adds:

> Mr. Hovenac [counsel for Defendants] mischaracterizes the Court of Appeal Opinion ("Opinion"). Importantly, the Opinion does not merely relate to the payment of rent. The Opinion held that, with respect to the right-of-way Union Pacific acquired via the pre-1871 and 1875 Congressional Acts ("Congressional Act right-of-way"), Union Pacific does not have sufficient ownership interests in the subsurface property to convey pipeline easements to SFPP or require rental payments. Thus, the subsurface of Congressional Act right-of-way is not "property of [the] Railroad," and the AREA does not govern these easements. Further, if Union Pacific cannot convey easements under Congressional Act right-of-way, it certainly cannot require relocation of those pipelines.

Dkt. 1-1, Ex. F.

---

[6]  Plaintiff's argument that Congressional Acts do not provide bases for federal question jurisdiction is unpersuasive. *Virgin v. Cnty. of San Luis Obispo,* 201 F.3d 1141, 1143 (9th Cir. 2000). In *Virgin,* the Ninth Circuit relied on a Supreme Court opinion which stated that:

> [a] suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States. If it were not, every suit to establish title to land in the central and western states would so arise, as all titles in those states are traceable back to those laws.

*Id.* (citing *Shulthis v. McDougal,* 225 U.S. 561, 569–70 (1912)). *Virgin* rejected the argument that a federal issue was necessarily raised simply "because one of the parties to [a controversy in respect of lands] has derived his title under an act of Congress." *Id.* (quoting *Shulthis,* 225 U.S. at 570). That is not the case here. This action is one in which there is a dispute regarding the "construction or effect of" a law "which takes its origin in the laws of the United States." *Id.* at 1143.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|----------|--------------------------|------|--------------|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

For these reasons, a question of federal law is raised by the Complaint. The COA Opinion was an important predicate for Plaintiff's request for an interpretation of the AREA. That decision relied on an interpretation of federal law. The interpretation of the AREA may well require a consideration of these or similar issues.

b)      Whether a Federal Question is Actually Disputed

To raise a federal issue that is "actually disputed," a state cause of action must "really and substantially involve[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Grable,* 545 U.S. at 313. The COA Opinion analyzed and determined the scope of the property rights granted to Defendant by the pre-1871 and 1875 Congressional Acts. *See UPRC,* 231 Cal. App. 4th at 164-65 ("the railroad's rights to the land underneath its rights-of-way granted by the 1875 Act were limited to what was necessary to support the railroad itself. Otherwise, the rights to the subsurface remained with the owner of the servient estate. Put another way, the 1875 Act granted the Railroad substantial rights to the surface of the land over which it operates its trains, but it did not make the subsurface the "property of the railroad.") ("The Railroad may use the subsurface underlying its pre–1871 rights-of-way for things that support the construction and operation of their railroad—i.e., for railroad purposes. But it cannot use the subsurface for other purposes. Renting out the subsurface to a third party from a different industry for private gain cannot reasonably be considered a railroad purpose.").

Based on these legal conclusions, the core federal issue presented here -- the standard for determining the scope of Defendant's ownership of the property -- has been determined by the COA Opinion, which applies to the parties to this action. Thus, in its opinion, the Court of Appeal determined that the Defendant's rights pursuant to the pre-1871 and 1875 Congressional Acts is limited to the real property that is used for railroad purposes or is necessary to support the railroad. Under these circumstances, this element has less force in connection with determining whether to exercise federal jurisdiction.

c)      Whether a Federal Question is Substantial

"The substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole." *Gunn,* 133 S. Ct. at 1066; *see also Grable,* 545 U.S. at 313 ("federal jurisdiction [over state action] demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."). Interpretation of the pre-1871 and 1875 Congressional Acts presents an issue important to the federal system as a whole. *See Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1234 (10th Cir. 2006) (interpretation of pre-1871 Congressional Act presented substantial federal issue under *Grable* because "[t]he statutes at issue granted to Union Pacific the right to construct a railroad and telegraph line in order to "secure the safe and speedy transportation of the mails, troops, munitions of war, and the public stores" to the West. *See, e.g.,* Act of July 1, 1862, ch. 120, § 3, 12 Stat. 489. Under subsequently enacted statutes, the United States has a reversionary interest in the lands when no longer used for their designated purposes. *See* 43 U.S.C. §§ 912, 913 and 16 U.S.C. § 1248(c). Thus, the government has a direct interest in the determination of property rights granted to the railroad.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|----------|--------------------------|------|--------------|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

Plaintiff argues that a determination of any federal issue will be tethered to the AREA. If this were a sufficient basis for federal jurisdiction, it would be based on a "fact-bound and situation-specific" question. Plaintiff contends that the Supreme Court has cautioned against applying the *Grable* exception in this manner, and cites *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). There, a health insurance carrier that provided coverage for federal employees brought an action against the estate of a former insured. In that action it sought reimbursement of insurance benefits that it had paid because the insured had recovered damages for his injuries in a state court tort action. *Empire* distinguished *Grable*, as a case that presented "a nearly pure issue of law" whose resolution would be "both dispositive of the case and would be controlling in numerous other cases." *Id.* at 700 (internal quotation marks omitted). In contrast, the Court concluded that the claim in *Empire*, "[wa]s fact-bound and situation-specific" and one that would turn on a determination of the particular charges by the health care providers and whether services were properly attributable to specific injuries caused by a specific set of circumstances. *Id.* at 701.

A resolution of the federal issue here would not be dispositive of this action. Significant factual issues would remain as to the interpretation and application of the AREA. They would include a determination as to what property is reasonably necessary for the Defendant's railroad operations and how that overlaps with the land in which the pipelines are located. That factual issue is framed by the legal analysis as to what was conveyed to Defendant by the operative Congressional Acts.

On balance, the federal issue is substantial.

          d)      Whether Resolution Would Disrupt the Federal-State Balance

The resolution of this action in this court would disrupt the federal-state balance. "[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Grable*, 545 U.S. 308 at 313-14.

As the Ninth Circuit has explained,

> The exercise of federal jurisdiction must not "disturb [ ] any congressionally approved balance of federal and state judicial responsibilities." [*Grable,* 545 U.S.] at 314, 125 S.Ct. 2363. The Supreme Court has instructed federal courts to approach 28 U.S.C. § 1331 "'with an eye to practicality and necessity.' " *Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 20, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). The Court has "consistently emphasized that, in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.*

*Nevada v. Bank of Am. Corp.,* 672 F.3d 661, 675-76 (9th Cir. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|----------|--------------------------|------|--------------|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

The questions of contractual interpretation presented by this action are at least as significant as the federal issue presented. The significance of the underlying federal issue will turn on the interpretation of the contract. Moreover, the contractual interpretation issues presented are complex. For example, if some form of mistake were shown to have occurred at the time of the entry of the AREA, substantial issues of appropriate remedies, which would arise under California law, would be presented. Such matters are best left to California courts.

Further, there has been a substantial amount of litigation between these parties in California courts. Three separate actions involving the parties are currently pending in California courts. The California Court of Appeal for the Second District has thoroughly examined the two congressional acts at issue and made determinations regarding their application to the AREA. That analysis will substantially inform the present matter. Should this matter proceed in the Los Angeles Superior Court where it was originally filed, the Superior Court would be bound to apply that interpretation. In addition, the application of the test established in the COA Opinion will occur in the Rental Action. It makes sense to have the similar related issues presented here, resolved by the same Superior Court.

Furthermore, the federal issue presented here, i.e., whether Defendant has sufficient property interest from the Congressional Acts to require Plaintiff to relocate pursuant to the AREA, is currently before the California Court of Appeal for the Fourth District. Should it reach a determination that is different from what was decided by the Second District in the COA Opinion, the California Supreme Court could elect to resolve the dispute. Thereafter, were substantial federal issues presented, a petition for review could be filed with the U.S. Supreme Court.

Finally, Plaintiff and Defendant have been litigating interrelated matters in California courts for more than two decades. California courts have already substantially analyzed the contractual relationship between these parties, as well as the AREA that underlies this action. Given the scope of overlap in the operations of the parties, more litigation is likely to occur in the future. Were the interpretation of the federal issues presented here deemed sufficient to establish federal jurisdiction, it would likely lead to a migration of all future disputes to the federal system. This would upset the appropriate federal-state balance in which disputes as to real property rights as well as competing business needs and objectives are best left for state courts to decide.

"*Grable* emphasized that it takes more than a federal element "to open the 'arising under' door." *Empire,* 547 U.S. at 701. As in *Empire*, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies." *Id.* This determination is made "with an eye to practicality and necessity." *Bank of Am. Corp.,* 672 F.3d at 675-76 (quoting *Merrell Dow,* 478 U.S. at 810).

*      *      *

For these reasons, the Motion is GRANTED. Plaintiff requests an award of costs and fees incurred as a result of the removal of this action by Defendant. This request is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

B.      Whether the Court Should Abstain from Adjudicating this Action

Plaintiff contends that even if the Court had subject matter jurisdiction over this action, it should decline to exercise it pursuant to the doctrine of declaratory relief abstention.

The goals for a district court to follow in deciding whether to exercise jurisdiction in a declaratory judgment action when a parallel action[7] is pending in state court are: (1) to avoid needless determination of state law issues, (2) to discourage litigants from filing declaratory actions as a means of forum-shopping, and (3) to avoid duplicative litigation (the "*Brillhart* factors"). *Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir.1998); *see Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942). In applying this test, a district court must "balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1367 (9th Cir.1991). "A district court, therefore, when deciding whether to exercise its jurisdiction under the Declaratory Judgments Act, must balance concerns of judicial administration, comity, and fairness to the litigants." *Id.*

The "*Brillhart* factors remain the philosophic touchstone for the district court." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.* Although "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief[, it] should generally decline to entertain reactive declaratory actions." *Id. Dizol* recognizes that a district court "is in the best position to assess how judicial economy, comity and federalism are affected in a given case." *Id.* at 1226.

The *Brillhart* factors are not the exclusive ones that are to be considered in making a determination as to abstention. The Ninth Circuit has identified other considerations,

> such as whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Id.* at n.5.

---

[7] For actions to be considered parallel, "[i]t is enough that the state proceedings arise from the same factual circumstances." *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 755 (9th Cir. 1996) *overturned on other grounds by Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

The *Brillhart* factors support abstention in this action even if there were subject matter jurisdiction. First, this action would involve a needless determination of state law. It would require decisions about California rules of contractual formation and interpretation, many of which may be complex and novel.

Second, the Beaumont Hill Action and Pomona Action each presents issues that correspond to the one presented here -- Defendant's request that Plaintiff re-locate certain pipelines pursuant to the AREA. Although each of these three actions concerns different real property, each involves the same parties and is governed by the same contract. "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). "The pendency of a state court action, however, does not of itself require a district court to refuse declaratory relief in federal court." *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1367 (9th Cir. 1991).

Finally, having this action proceed in federal court when California courts have been analyzing the AREA for many years would result in potential for conflicts in decision-making by the federal and state court systems. Moreover, determining the federal issue presented would not settle all aspects of the controversy.

C.      Reviewability of this Order by the Ninth Circuit

At the hearing on the Motion, counsel for Defendant requested that, should the Court grant the Motion, it certify the order for appeal to the Ninth Circuit. Defendant cited no legal authority pursuant to which this appeal would be proper.

28 U.S.C. § 1447(d) provides

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

"Despite this broad prohibition, the Supreme Court has held that § 1447(d) must be read together with § 1447(c) such that § 1447(d) precludes review only of remands made pursuant to a ground enumerated in § 1447(c)." *Aguon-Schulte v. Guam Election Comm'n,* 469 F.3d 1236, 1240 (9th Cir. 2006) (citing *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 345-46 (1976)). "Section 1447(c) states that remand may be ordered either for lack of subject matter jurisdiction or for 'any defect' in the removal procedure." *Id.* (citing 28 U.S.C. § 1447(c)). "Therefore, a remand order is not reviewable if (1) the district court lacked subject matter jurisdiction, or (2) the moving party filed a timely motion raising any defect other than a lack of subject matter jurisdiction." *In re Blatter*, 241 F. App'x 371, 373 (9th Cir. 2007) ("because we conclude that [the district court] remanded the case on the basis that it lacked subject matter jurisdiction, we do not have jurisdiction to review the petition [for writ of mandamus].");

Because this case is remanded due to a lack of subject matter jurisdiction, the Ninth Circuit does not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV15-01954 JAK (PLAx) | Date | June 3, 2015 |
|---|---|---|---|
| Title | SFPP, L.P. v. Union Pacific Railroad Company, et al. | | |

jurisdiction to review this order. *See Thermtron,* 423 U.S. at 343-51 ("If a trial judge purports to remand a case on [a] ground [covered by 1447(c)] his order is not subject to challenge in the court of appeals by appeal, by mandamus, or otherwise.").

**IV.    Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED.** This action is remanded to the Los Angeles Superior Court in its Stanley Mosk Courthouse.

**IT IS SO ORDERED.**

                                                                            :

                                            Initials of Preparer    ak